# DAN V. BAIR II
## Attorney at Law

15 Foster Street
Quincy, Massachusetts 02169
Tel.: 508-277-0720

DAN V. BAIR, II
dbair@danbairlaw.com

File No.: 20122.001

October 15, 2020

**SENT VIA FIRST CLASS MAIL**
Erika V. Reis, Esq.
City of Boston Law Department
1 City Hall Square, Room 615
Boston, MA 02201

*[Stamp: CITY OF BOSTON LAW DEPARTMENT 2020 OCT 19 AM 11:43]*

    RE:    **Beth Donovan v. City of Boston, 2084CV01712A**

Dear Attorney Reis:

    It is my understanding that you agreed to accept service on behalf of the City of Boston in the above referenced matter. Enclosed please find a copy of the complaint, civil action cover sheet, tracking order and summons. Please fill out the back of summons indicating that you are accepting service on behalf of the City of Boston and return it to me. I will then file it with the court and cc you on the correspondence. Should you have any questions or concerns feel free to contact me. Thank you.

Sincerely,

*[Signature]*

Dan V. Bair II

## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084CV01712A

Beth Donovan, PLAINTIFF(S),

v.

City of Boston, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO __City of Boston__. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the __Suffolk Superior__ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Superior Court, __Three Pemberton Square, Boston, MA 02108__ (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: __15 Foster St., Quincy MA 02169__

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.
5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____
_____
_____

Dated: _____, 20____   Signature: _____

N.B. **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX -- BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Suffolk, ss.                                                                 Superior Court Department
                                                                             Civil Action No.

BETH DONOVAN,                          )
Plaintiff                              )
                                       )
                                       )                    RECEIVED
v.                                     )
                                       )                    AUG - 3 2020
CITY OF BOSTON                         )
Defendant                              )                    SUPERIOR COURT-CIVIL
                                       )                    MICHAEL JOSEPH DONOVAN
                                                            CLERK/MAGISTRATE

**PLAINTIFF'S COMPLAINT**

I. Nature of the Action

1. Plaintiff, Beth Donovan ("Donovan"), brings this action against the City of Boston ("Boston") for gender discrimination, hostile work environment based on gender, retaliation, disability discrimination, and coercion, intimidation, threats and interfering with the right to be free from discrimination in violation of Massachusetts General Laws, Chapter 151B, Sections 4 (1), 4 (4), 4(4A) and 4 (16). Additionally, Donovan brings this action against Boston for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

II. The Parties

2. Plaintiff, Beth Donovan, is a natural person residing in Boston, Suffolk County, Massachusetts.

3. The City of Boston ("Boston") is a municipality located in Suffolk County, Massachusetts. Boston Police Department ("BPD"), is a political subdivision of Boston located at One Schroeder Plaza, Boston, Suffolk County, Massachusetts.

1

III. Venue

4. Venue is proper as Plaintiff resides in Boston, Suffolk County, Massachusetts.

IV. The Facts

5. Boston is an employer as defined under G.L. c.151B, § 1 (5). BPD is a paramilitary organization with a well-defined command structure.

6. Donovan has been an employee of the BPD for approximately twenty-four (24) years.

7. Donovan's work performance has always been satisfactory.

8. On or about January 20, 2017, Donovan was promoted to Deputy Superintendent-Assistant Bureau Chief (Bureau of Field Services), and was one of the three highest ranking female employees of the BPD. Donovan supervised approximately 1300 uniformed officers.

9. On October 13, 2013, Donovan was sexually assaulted by a male suspect at a restaurant located in Boston, Massachusetts. Donovan called 911 and the BPD responded.

10. The suspect identified himself as a police officer and the BPD initially refused to transport and book the suspect. With the suspect were two off-duty police officers- Roger Layden ("Layden") and Patrick McGillicuddy ("McGillicuddy"). They were made aware of the sexual assault, but never identified themselves as BPD officers or offered any assistance.

11. As Donovan was confronting the suspect, Layden and McGillicuddy smiled, McGillicuddy raised his hands over his head and mockingly said something to the effect "Don't worry I won't touch you too."

12. Finally, the suspect was transported to the C-11 station for processing. Donovan later learned the suspect was not processed in accordance with normal procedures and was

instead granted numerous special privileges including being allowed to roam the C-11 booking area freely and making cell phone calls.

13. Over the next few days Donovan was contacted by William Evans ("Evans") who held the rank of Superintendent at the time and Superintendent in Chief Daniel Linskey ("Linskey") concerning the events of October 13, 2013. I was told by both that there were approximately eleven Internal Affairs Division ("IAD") complaints filed concerning the incident (including a number against Layden and McGillicuddy).

14. For the next several years Donovan would make inquiries regarding the status of the IAD investigation and was always told it was ongoing. Donovan was never interviewed as part of any IAD investigation.

15. The male suspect who sexually assaulted DOnovan was convicted of indecent assault and battery.

16. On January 20, 2017, Donovan was promoted to Deputy Superintendent, and as part of her duties she reviewed open IAD cases in the districts she supervised.

17. In March 2017, Donovan met with Frank Mancini ("Mancini"), Superintendent of IAD, and went over the open IAD cases. At that meeting Donovan inquired about the status of the IAD cases stemming from her October 13, 2013 sexual assault. Mancini replied he would look into it.

18. On June 4, 2017, there was a high school graduation party at the home of Donovan's next door neighbor, Lieutenant Richard Driscoll ("Driscoll") which she attended with her husband. Driscoll is an employee of the BPD. Prior to June 4, 2017, Donovan did not have any issues of significance with Driscoll or his family.

19. Donovan left the party around 10:00pm and returned to her home. The party at Driscoll's home continued and Donovan observed several kids urinating on her lawn and her neighbor's bushes. Donovan went next door and told Driscoll what she saw and he told Donovan he would handle it.

20. Soon after Donovan saw Driscoll and his wife outside at the top of their driveway. Donovan went outside again and told Driscoll the music was too loud. Driscoll was visibly intoxicated. Driscoll became enraged and threw his beer at Donovan. He then screamed that Donovan was a "f------ c---" and that "I was so f------- done." Driscoll screamed this at Donovan repeatedly.

21. Donovan realized that Driscoll was out of control and extremely intoxicated so she returned to her house. Driscoll followed Donovan to the door screaming at her that Donovan was a "f------- coward" and that she was "so f------ done." Donovan entered her home and tried to close the door but Driscoll began pushing against the door. Finally, Donovan was able to close and lock it.

22. Driscoll then began banging against the door, ringing the doorbells and screaming, "come out and fight me you f------ coward." At that point Donovan called 911 and reported what was going on. Donovan spoke with Lieutenant Beth Leary ("Leary"), Superintendent William Ridge ("Ridge") and Captain Robert Ciccolo ("Ciccolo") and reported what was happening.

23. Eventually police cars from Area C-11 of the BPD arrived. No officer came to Donovan's door even though she was the one that called 9-11. Finally, Ciccolo came to Donovan's door and told her he would deal with Driscoll and then returned a while later to say that Driscoll was in bed and would not bother Donovan that night. Despite Donovan's 911 calls, calls to supervisors and reporting of the incident no BPD incident report was filed on the night of the incident. No responding officers were required to file reports.

24. Afterwards, Driscoll sent Donovan multiple texts apologizing for his discriminatory and harassing behavior of June 4, 2017.

25. Donovan filed a report with her supervisor, Ridge who forwarded it to IAD documenting the incident on June 5, 2017. Ciccolo also filed a report several days

4

later. However, portions of BPD phone transmissions and call logs were destroyed by persons unknown in order to make Driscoll's assault of her "disappear."

26. Additionally, the 1.1 report filed concerning the incident of June 4, 2017, was downgraded and changed from a Breaking and Entering charge to simply Investigate Premises by the Chief of Staff for the Police Commissioner, Superintendent Kevin Buckley). This was way outside the norm.

27. Mancini entered Donovan's complaint into the IAD system on June 5, 2017; however, he deliberately changed the information she submitted.

28. On June 6, 2017, Lieutenant Brian McEarchern threatened Donovan that "[I] could have charges against [me]" stemming from the June 4, 2017 incident.

29. On July 27, 2017, Donovan was ordered by Mancini to report to IAD for an interview concerning her IAD complaint against Driscoll.

30. On July 28, 2017, Donovan was interviewed by IAD concerning the June 4, 2017, incident. Donovan gave IAD the names and contact information of multiple witnesses to Driscoll's discriminatory and assaultive conduct on June 4, 2017. However, IAD did not bother to contact witnesses until November of 2017 following her repeated inquiries.

31. On August 4, 2017, Donovan met with Mancini and Sergeant Rich Dahill ("Dahill") to review the status of the October 13, 2013 incident and subsequent IAD investigation.

32. Mancini told Donovan he looked into the alleged IAD investigation into the October 13, 2013, incident and said there was no investigation. When Donovan told him that Evans and Linskey told her there was an investigation Mancini said they must have been mistaken.

33. Donovan then told Mancini she knew officers that were interviewed as part of the investigation. At this point Mancini smirked at her and said "clearly nobody found

5

anything egregious enough to investigate." Mancini blatantly lied as there was an investigation.

34. Donovan was visibly shaking when she left Mancini's office as Donovan had been led to believe that there was an ongoing investigation since 2013. Donovan then approached her supervisor, Superintendent Ridge and told him what occurred. Ridge concurred that he was also led to believe that there was an ongoing investigation.

35. Donovan submitted a FOIA request to the BPD concerning the October 13, 2013 IAD investigation. Donovan learned that eleven (11) officers were interviewed as part of the investigation; however, Layden and McGillicuddy were not among those interviewed.

36. On or about August 21, 2017, Donovan met with Evans and complained about how Mancini was hostile towards women and explained how Mancini failed to investigate her IAD complaints of October 13, 2013 (Sexual Assault Incident) and June 5, 2017 (Driscoll Incident). Evans assured Donovan that her IAD complaints would be investigated.

37. On or about August 24, 2017, at the Boston Police Harbor Patrol Unit, Evans told Donovan he spoke with Mancini. Evans stated he told Mancini "first Donna [Gavin] and now Beth, people are going to think you have a problem with women." Evans then told Donovan Mancini stated "I love women!" At this point Evans burst out laughing and when Donovan did not laugh he stated "I know, I know he will get this done." Donovan was humiliated.

38. On September 23, 2017, Donovan was informed by Ridge that the Driscoll's house had been egged and she was suspected of doing it. While multiple people were interviewed by IAD (including Driscoll's wife) Donovan was not.

39. After the June 4, 2017, incident Donovan had a number of home security cameras installed at her residence. Donovan has video (which she alerted Superintendent

6

Ridge and IAD to) of a male youth walking up her street and throwing an egg at the Driscoll's home. No one from IAD bothered to view the video.

40. On September 26, 2017, Donovan was approached by Sergeant Mark Freire ("Freire") of the BPD Peer Support Unit. Friere told her "people were concerned about my drinking." Donovan was taken aback and asked what he was talking about. Friere stated he was told Donovan was drinking during the October 13, 2013 incident, the Driscoll incident and an incident in Marshfield (Donovan has a summer home in Marshfield). Donovan explained that none of the incidents he mentioned had anything to do with her drinking. Upon information and belief, Friere was sent to speak to Donovan in an effort to intimidate her.

41. Evans, who was now the Police Commissioner, called Ridge and one of Donovan's subordinates into his office and called her a drunk.

42. On September 28, 2017, Donovan was informed by Captain John Danilecki ("Danilecki"), who was under her chain of command and did not work in IAD, that there were now IAD complaints lodged against Donovan concerning her interactions with her neighbor in Marshfield.

43. On September 26, 2017, Donovan's neighbor, Dick Reirdon ("Reirdon") in Marshfield filed for a Harassment Prevention Order against her. When Donovan appeared in court to defend herself she noticed Lieutenant Fred Williams of BPD's IAD was present. Reirdon decided to withdraw his petition for a Harassment Prevention Order and told Donovan's attorney that the BPD/IAD instructed him to file it against Donovan.

44. On or about November 18, 2017, Donovan was told Driscoll filed another police report claiming his house was egged again. Upon information and belief, IAD opened yet another complaint against Donovan.

45. On or about January 11, 2018, Mancini told Donovan that IAD would not seek complaints against Driscoll for his discriminatory, criminal and harassing behavior on June 4, 2017.

46. On January 12, 2018, Donovan filed an application for a criminal complaint against Driscoll.

47. On January 16, 2018, Donovan filed a complaint for hostile work environment based on gender against Mancini with the BPD.

48. As a result of Donovan filing a complaint of discrimination, the BPD began circumventing her in the chain of command, denying her access to information and resources in conjunction with her job duties and responsibilities and not inviting Donovan to important meetings.

49. Donovan was denied privileges/benefits normally extended to her male counterparts.

50. On or about February 16, 2018, there was a District Court hearing on Donovan's criminal complaint against Driscoll. Information that was confidential and in the possession of IAD/BPD was leaked to Driscoll's attorney and used in the proceeding. IAD/BPD does not leak confidential information concerning male supervisory employees.

51. On March 19, 2018, Sergeant Richard Fitzpatrick ("Fitzpatrick") filed a frivolous IAD complaint against Donovan concerning a report she submitted to Superintendent in Chief Kevin Buckley on March 3, 2018.

52. On May 9, 2018, Donovan was placed on administrative leave. Her badge, weapon and license to carry were confiscated by the BPD. Donovan, at the time, was not told the reason for being placed on administrative leave. Donovan believes this was done in retaliation for her filing complaints against Driscoll, Mancini and the BPD. BPD's conduct was degrading and humiliating.

53. Neither Mancini nor Driscoll have been placed on administrative leave. Moreover, to my knowledge none of the male officers who I have named in my IAD complaints have ever been placed on administrative leave.

54. On May 24, 2018, Donovan was informed that Driscoll's wife and an unnamed source filed complaints against her for allegedly making a racial comment about Chief William Gross ("Gross"). Donovan has never made any racial comments about Gross.

55. The BPD has a pattern and/or practice of falsely accusing female supervisory officers of making racial comments about male supervisory officers in retaliation for bringing complaints of harassment/discrimination.

56. On or about April 19, 2018, the male suspect who was convicted of sexually assaulting Donovan filed for a new trial with the Boston Municipal Court. Contained within the pleadings was confidential and personal information concerning Donovan which was leaked to the male suspect's attorney by IAD/BPD. This was stated in affidavit submitted by the male suspect's attorney. This was done by the BPD in retaliation for Donovan filing complaints of harassment and/or discrimination.

57. On or about July 30, 2018, Donovan filed a complaint with the Massachusetts Commission Against Discrimination.

58. On or about September 22, 2018, Donovan was demoted from Deputy Superintendent to Sergeant. This was done in retaliation for Donovan filing complaints of harassment and/or discrimination.

59. Upon information and belief, the BPD has a pattern and/or practice of retaliating against female supervisory officers when they make complaints of harassment and/or discrimination against male supervisory employees.

60. As a result of Defendant's discriminatory and retaliatory behavior Donovan has suffered emotional distress.

## COUNT ONE
## GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON GENDER
## (Violation of M.G.L. c.151B, § 4 [1])

61. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 60 above and incorporates same by reference.

62. Defendant, Boston discriminated against Plaintiff with respect to terms, conditions, and/or privileges of employment based on her gender as outlined above in paragraphs 1-61. Additionally, Boston created and maintained a hostile work environment against Plaintiff based on her gender.

63. As a result of the Boston's conduct, Plaintiff has suffered damages, including but not limited to, lost wages, emotional distress damages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Beth Donovan demands judgment against Defendant, City of Boston, in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT TWO
## RETALIATION (Violation of M.G.L. c.151B, § 4 [4])

64. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 63 above and incorporates same by reference.

65. Plaintiff engaged in protected activity by complaining of discrimination, to the BPD.

66. Plaintiff engaged in protected activity by filing a charge of discrimination with the Massachusetts Commission Against Discrimination.

67. Defendant retaliated against Plaintiff for engaging in protected activity as outlined above in paragraphs 1-66.

10

68. As a result of the Defendant's conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Beth Donovan demands judgment against Defendant, City of Boston in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT THREE
## INTERFERENCE WITH THE RIGHT TO BE FREE FROM DISCRIMINATION
### (Violation of M.G.L. c.151B, § 4 [4A]

69. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 68 above and incorporates same by reference.

70. Plaintiff exercised rights granted and/or protected under M.G.L. c.151B as outlined in Paragraphs 1-69 above.

71. Defendant Boston interfered, coerced, intimidated and/or threatened Plaintiff as a result of her activities outlined in Paragraphs 1- 70 above.

72. As a result of the Defendant's conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Beth Donovan demands judgment against Defendant, City of Boston in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT FOUR
## DISABILITY DISCRIMINATION
### (Violation of M.G.L. c.151B, § 4 [16])

73. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 72 above and incorporates same by reference.

74. Defendant discriminated against Plaintiff with respect to terms, conditions, and/or privileges of employment based on a perceived disability (alcoholism) as outlined above in paragraphs 1-73.

75. As a result of the Defendant's conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Beth Donovan demands judgment against Defendant, City of Boston in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT FIVE
## GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON GENDER
### (Violation of Title VII, 42 U.S.C. § 2000e-2)

76. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 75 above and incorporates same by reference.

77. Defendant, Boston discriminated against Plaintiff with respect to terms, conditions, and/or privileges of employment based on her gender as outlined above in paragraphs 1-76. Additionally, Defendant created and maintained a hostile work environment against Plaintiff based on her gender.

78. As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to, lost wages, emotional distress damages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Beth Donovan demands judgment against Defendant, City of Boston, in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT SIX
### RETALIATION (Violation of Title VII, 42 USC § 2000e-3)

79. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 78 above and incorporates same by reference.

80. Plaintiff engaged in protected activity by complaining of discrimination/retaliation to Boston.

81. Plaintiff engaged in protected activity by filing a charge of discrimination with the Massachusetts Commission Against Discrimination.

82. Defendant Boston retaliated against Plaintiff for engaging in protected activity as outlined above in paragraphs 1-81.

83. As a result of the Defendant's conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Beth Donovan demands judgment against Defendant, City of Boston in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.**

PLAINTIFF,
BETH DONOVAN

Date: July 31, 2020     By: _____
Dan V. Bair II, Esq. (BBO# 654369)
dbair@danbairlaw.com
Dan V. Bair, Attorney at Law
15 Foster Street
Quincy MA 02169
Tel: (508) 277-0720
Fax: (617) 770-4091

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 2084CV01712 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Donovan, Beth vs. City of Boston | | Michael Joseph Donovan, Clerk of Court |
| TO: Dan V Bair, II, Esq. 15 Foster St Quincy, MA 02169 | | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**      **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/02/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 12/01/2020 | |
| All motions under MRCP 12, 19, and 20 | 12/01/2020 | 12/31/2020 | 02/01/2021 |
| All motions under MRCP 15 | 12/01/2020 | 12/31/2020 | 02/01/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 05/31/2021 | | |
| All motions under MRCP 56 | 06/29/2021 | 07/29/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/26/2021 |
| Case shall be resolved and judgment shall issue by | | | 08/03/2022 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to

| DATE ISSUED 08/03/2020 | ASSISTANT CLERK Timothy C Walsh | PHONE (617)788-8121 |
|---|---|---|

Date/Time Printed: 08-03-2020 14:52:49      SCV026\ 08/2018

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| PLAINTIFF(S): Beth Donovan<br>ADDRESS: Boston, Massachusetts | | COUNTY: Suffolk |
| | DEFENDANT(S): City of Boston | |
| ATTORNEY: Dan V. Bair II<br>ADDRESS: 15 Foster Street, Quincy, MA 02169 | ADDRESS: Boston Police Department, One Schroeder Plaza, Boston, MA 02120 | |
| BBO: 654369 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination/Retaliation | F | [X] YES [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A? [ ] YES [X] NO
Is this a class action under Mass. R. Civ. P. 23? [ ] YES [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses .................................................................. $
  2. Total doctor expenses ..................................................................... $
  3. Total chiropractic expenses ........................................................... $
  4. Total physical therapy expenses ................................................... $
  5. Total other expenses (describe below) ......................................... $
     Subtotal (A): $
B. Documented lost wages and compensation to date ...........................
C. Documented property damages to date ..............................................
D. Reasonably anticipated future medical and hospital expenses ........
E. Reasonably anticipated lost wages ......................................................
F. Other documented items of damages (describe below) ..................... $250,000+
  Emotional Distress and Lost Wages
G. Briefly describe plaintiff's injury, including the nature and extent of injury:
  Employment Discrimination and Retaliation resulting in lost wages and emotional distress damages

TOTAL (A-F): $250,000+

RECEIVED AUG 13 2020 SUPERIOR COURT-CIVIL MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE

### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X  Date: 7/31/2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X  Date: July 31, 2020