UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BETH DONOVAN, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | Civil Action No. 1:20-cv-11976-AK |
| v. | ) ) | |
| CITY OF BOSTON, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

As a non-party to this action, Melissa Driscoll ("Mrs. Driscoll") has filed a motion to quash the subpoena filed against her by plaintiff Beth Donovan ("Donovan"). Plaintiff Donovan has filed a cross-motion to compel Mrs. Driscoll to provide certain communications. The Non-Party Melissa Driscoll's [Dkt. 36] motion to quash is **DENIED**, accordingly, the Plaintiff's [Dkt. 37] cross-motion to compel is **GRANTED**.

**I.     BACKGROUND**

Mrs. Driscoll is the wife of Lt. Driscoll of the Boston Police Department ("BPD") and is a central figure in the events that occurred surrounding Plaintiff's suspension and subsequent demotion. The Driscolls are neighbors of the plaintiff and the first altercation with the Driscolls occurred in 2017 during a high school graduation party happening at the Driscoll's residence. [Dkt. 2-3 at ¶ 18]. Plaintiff complained to the Driscolls about the music coming from their house and about people urinating on her lawn. This resulted in Lt. Driscoll reportedly throwing his beer at Donovan and yelling obscenities at her. [Dkt. 2-3 at ¶ 20]. Plaintiff left for her house,

and Lt. Driscoll followed her, continuously yelling at her, and began pushing against her front door. [Dkt. 2-3 at ¶ 21]. Plaintiff called 911, and after some time she was told that Lt. Driscoll wouldn't bother her. [Dkt. 2-3 at ¶ 23]. Afterwards, Lt. Driscoll allegedly sent Donovan text messages apologizing for his actions. [Dkt. 2-3 at ¶ 24].

Approximately 3 months after this incident, three civilian complaints were brought nearly simultaneously against Plaintiff and/or her husband. [Dkt. 37 at 5]. These complaints varied in nature, but they all accused Plaintiff of causing damage to their properties, and according to one of the complainants, these complaints were filed specifically to support the Driscolls. [Dkt. 37 at 6]. Michael Donovan, Plaintiff's husband, stated that one of the neighbors who complained said that she "felt the need to come forward" due to the harassment suffered by the Driscolls. [Dkt. 37-11]. Lt. Driscoll testified that his wife had established some sort of "victim group'" for people who were allegedly harassed by Donovan. Mrs. Driscoll had also obtained a video of Donovan arguing with somebody through Marshfield civilians who previously complained about Donovan. [Dkt. 37 at 6].

Later, the Driscolls' house was egged, and Plaintiff was suspected of this as well, despite there allegedly being video evidence that proves that Plaintiff was not responsible. [Dkt. 2-3 at ¶ 38, 39]. Eventually, the tension escalated to the point of various allegations lodged with the Police Department about Plaintiff's alleged substance abuse and accusations that were made by Mrs. Driscoll that Plaintiff used racial slurs in reference to the African American Police Chief. [Dkt. 2-3 at ¶ 54]. Due to these allegations, Plaintiff was placed on administrative leave [Dkt. 2-3 at ¶ 52] and was later demoted from Deputy Superintendent to Sergeant after filing a complaint with the MCAD. [Dkt. 2-3 at ¶ 58]. As a result of Mrs. Driscoll's level of involvement with

these events, Plaintiff served her with a subpoena to obtain communications between her and various concerned parties. [Dkt. 37].

## II. LEGAL STANDARD

Subpoenas that seek to obtain information from a non-party are subject to the relevance and proportionality burden of Rule 26(b)(1). Solamere Cap. v. DiManno, 2022 WL 3154551, at *5 (D. Mass. 2022). If obtaining the information requested puts a significant burden on the non-party, then courts have the power to modify or quash the subpoena. Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). In evaluating this burden, the Court evaluates the relevance of the information, its necessity, the inconvenience that will be brought on the party by complying with the subpoena, and the breadth of the request. Katz v. Shell Energy N. Am., 566 F. Supp. 3d 104, 106 (D. Mass. 2021). Third party subpoenas are also subject to the general discovery rule that if there is another source from which the information sought can be obtained, then discovery must be limited. Solamere Cap. v. DiManno at *5.

## III. DISCUSSION

In the instant case, Plaintiff is requesting documents and electronic communications including text messages from a non-party witness, albeit one who has had an active role in the events forming the basis of the claims in this case. [Dkt. 37-1, at ¶ 1-5]. According to Plaintiff, Mrs. Driscoll was a key figure in many of the events that contributed to Plaintiff's demotion. Due to this, any communications that she has had with various parties that are involved are relevant to deciding the issues in this case. Therefore, any communications between non-party Mrs. Driscoll and those who filed complaints against Plaintiff following the incident on June 4, 2017, concerning Plaintiff, shall be produced. [Id.]. Furthermore, any communications related to Plaintiff, between Mrs. Driscoll and police officers who were involved in the Internal Affairs

investigation, as well as any communications between Mrs. Driscoll and the friends of Lt. Driscoll, shall be produced. [Dkt. 37-1, at ¶ 6-8]. Lastly, the request for documents and communications sent or received in connection with any police reports should also be produced. [Dkt. 37-1, at ¶ 19].

The information sought by Plaintiff is relevant for ascertaining the details behind the placement of Plaintiff on administrative leave and her subsequent demotion. The fact that three complaints were filed against the Plaintiff simultaneously by close associates of Mrs. Driscoll, and the formation of a "victim group" indicates direct involvement and shows influence which Mrs. Driscoll appeared to have over key events that led to Plaintiff being placed on administrative leave and later demoted. Indeed, it seems that the decision to place Plaintiff on leave was due to a combination of factors, including the various complaints filed against her, Plaintiff's alleged substance abuse, the racial slur allegedly used when speaking of the Commissioner, and her general inability to perform her job due to these circumstances. [Dkt. 37, at 7]. Therefore, any of the above communications that shed light on these allegations are highly relevant. Furthermore, it is less burdensome on Mrs. Driscoll to obtain these communications as opposed to obtaining them from the other concerned parties due to her prominence as a central figure in the events that have unfolded. It is also not unduly burdensome to produce this information, as the requested communications are limited to those that concern Plaintiff. See Fed. R. Civ. P. 26(b)(1); see also Oppenheimer Fund, Inc. v Sanders, 437 U.S. 340, 351 (1978) (noting that Fed. R. Civ. P. 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case").

Mrs. Driscoll also raised an issue that Plaintiff's subpoena infringes on her constitutional right to privacy, freedom of association, and First Amendment rights to speak with her friends. [Dkt. 36 at 2]. However, as Plaintiff notes in her opposition, there is no cited case law to support this position. Additionally, Plaintiff alleges that Mrs. Driscoll led a campaign against Donovan resulting in Boston Police Department's adverse employment actions. [Dkt. 37 at 21]. In fact, courts have stated that subpoenas often require witnesses to retrieve documents from locations where a reasonable amount of privacy is expected; this does not transform them into a search that raises any constitutional concerns. In re Enf't of Subpoena 436 Mass. 784, 793–94 (2002). Due to her involvement, it is less burdensome on Mrs. Driscoll to obtain these communications as opposed to obtaining them from the other concerned parties, as she is significant actor in the events that later unfold. Furthermore, as the content of these communications is instrumental in establishing the truth of the complaints that have been filed against Plaintiff by Mrs. Driscoll's friends and are potentially indicative of any bias that may be present, the need for the information outweighs any privacy interest that may be present.

## IV. CONCLUSION

For the foregoing reasons, the non-party's Motion to Quash [Dkt. 36] is **DENIED**, accordingly, the Plaintiff's [Dkt. 37] cross motion to compel is **GRANTED**.

**SO ORDERED.**

Dated: January 20, 2023                                    /s/ Angel Kelley
                                                           Hon. Angel Kelley
                                                           United States District Judge