UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETH DONOVAN | ) |
| Plaintiff, | ) |
| v. | ) C. A. No. 1:20-cv-11976 |
| CITY OF BOSTON | ) **REQUEST FOR ORAL ARGUMENT** |
| Defendant | ) |

### PLAINTIFF BETH DONOVAN'S OMNIBUS MOTION TO COMPEL DEFENDANT CITY OF BOSTON TO PRODUCE DISCOVERY

Plaintiff Beth Donovan ("Plaintiff") respectfully files this omnibus motion to compel discovery related to her claims of discrimination and retaliation against Defendant City of Boston ("Defendant"). Specifically, Plaintiff seeks the following: (1) to take third-party witness Richard Reardon's ("Reardon") deposition outside of the fact discovery period; (2) for Defendant to produce a 30(b)(6) designee as to identified topics; (3) for Defendant to produce Dr. Andrew Brown ("Dr. Brown"), a medical provider for the Boston Police Department ("BPD") for a brief deposition; (4) for Defendant to produce all records related to an interview of Melissa Driscoll ("Mrs. Driscoll") that was held on September 22, 2017; (5) for Defendant to produce the discovery related to the BPD response to the Driscolls' home on January 2 – 3, 2023 ("January 2 Incident"), including information related to the Internal Affairs investigation into Richard Driscoll ("Driscoll"); (6) for Defendant to provide body camera footage of Mrs. Driscoll related to the January 2 Incident; (7) for Defendant to produce all documents responsive to Plaintiff's Requests for Production of Documents; and (8) to take third-party witness Susan Callahan's ("Callahan")

1

deposition outside of the fact discovery period.[1] As grounds for this request, Plaintiff further states as follows:

## I. Brief Factual Background

Plaintiff is a member of the BPD who was placed on administrative leave and demoted from her position as the Deputy Superintendent of the Bureau of Field Services ("BFS") after she made complaints about several high-ranking male officers including complaints of discrimination. In June of 2017, Plaintiff's neighbor and fellow officer, Driscoll, held a high school graduation party for his daughter. As it was late on a school night and after observing kids show up with alcohol and urinating on her and other neighbors' yards, Plaintiff asked Driscoll to get the party under control. Driscoll, heavily intoxicated, proceeded to spike a can of beer at Plaintiff's feet, call her a string of profanities, including the C-word, follow her, try to force his way into her house, and call her to fight. Alarmed by this misogynist attack, Plaintiff called 911 and the next day was ordered by her immediate supervisor to draft a report which was given to the BPD Internal Affairs Department ("IAD") to investigate.

However, the BPD did not promptly investigate the June 4 incident. Over the next few months Plaintiff raised concerns with how the IAD investigation was being handled and how she was being treated as a female officer. Her concerns included not only how IA was handling the investigation against Driscoll (i.e., doing nothing), but also Superintendent Frank Mancini's ("Mancini") (the head of IAD), hostile attitude towards her and IAD's failure to investigate an incident involving a 2013 sexual assault.

---

[1] Mrs. Driscoll filed a motion to quash a subpoena for the phone records from June 2017 to May 31, 2018. *See* Doc No. 70. Plaintiff will address the relevance of this request in response to the motion to quash.

Rather than investigate the June 4, 2017 incident and concerns with her treatment, the BPD, with Mancini and former Commissioner William Evans ("Evans") at the helm began a campaign to ruin Plaintiff's career. Rather than interview Driscoll or eye-witnesses in a timely manner, the BPD rushed to investigate bogus complaints raised by several civilians, including Richard Reardon, Melissa Graham, and Susan Callahan in September 2017, as well as an egging at the Driscoll home. The evidence shows that Mancini and Evans were interested in putting Plaintiff on administrative leave and/or demoting her from the Command Staff, especially after she accused Mancini of discrimination against her. To that end, Mancini and Evans falsely accused Plaintiff of having an alcohol abuse problem. Empowered by the BPD's inactivity, after over five months passed and despite previously accepting responsibility for his actions that night, Driscoll falsely alleged that Plaintiff had caused the problem on June 4 by calling his wife the C-word. He denied any knowledge of having tried to forcibly enter her house and threatening to fight her. In 2018, Driscoll and his wife falsely accused Plaintiff of referring to Chief William Gross ("Gross") by a racial slur. The BPD placed Plaintiff on administrative leave in May of 2018 due to this false accusation (which ultimately was not sustained) and her purported drinking problem.[2]

Plaintiff has been on administrative leave since May of 2018, even though IAD did not sustain the allegation that she had used a racial slur nor the allegation of alcohol abuse. BPD has never even asked Plaintiff to submit to a medical evaluation for alcohol abuse. Plaintiff does not have and has never had an alcohol abuse problem.

Plaintiff was the first female officer to hold the position of Deputy Superintendent of the Bureau of Field Services ("BFS") and according to her immediate supervisor, she was doing an

---

[2] At his deposition, Gross testified he had never heard Donovan use racial slurs, and he had only good things to say about her as a person and a member of the Command Staff.

3

excellent job. Plaintiff has been devastated by BPD's actions, and her career has been destroyed. Plaintiff aspired to remain on the Command Staff and assume the Superintendent of BFS position when her supervisor retired (as was the norm). Instead, she has been demoted to the rank of Sergeant, has watched the Deputy Superintendent who replaced her become the Superintendent, and has been pushed out of her career being left on administrative leave for five years.

## II. Relevant Procedural Posture

Fact discovery is scheduled to close on April 14, 2023. Doc No. 61. Expert discovery is to be completed by August 16, 2023. *Id.* The parties are not filing dispositive motions and a trial is scheduled to commence on January 8, 2024. Doc No. 67.

Plaintiff served her initial 30(b)(6) deposition notice and Schedule A on Defendant on September 7, 2022. Following a telephonic conference between counsel, Plaintiff narrowed the Schedule A and served a re-notice on January 19, 2023. *See* **Exhibit 1**. Defendant only designated a witness for Topic Nos. 17-21, 24-25 (as they pertained to IAD and/or discipline) and 40, and the witness was not made available until April 11, 2023, three days before the close of fact discovery.

On June 22, 2021, Plaintiff served her First Set of Requests for Production ("RFPs"). *See* **Exhibit 2**. Defendant produced documents on a rolling basis, with the bulk of the production produced between April through December 2022. On December 14, 2022, Plaintiff served her Second Request for RFPs. *See* **Exhibit 3**. Again, the City produced documents on a rolling basis, and, based upon statements made by counsel, have additional responsive documents to produce.

On February 2, 2023, Plaintiff inquired about the January 2, 2023 police response to the Driscoll home. *See* **Exhibit 4**. Defendant has never provided its position as to whether it would produce this information. Plaintiff served a subpoena on Reardon on March 7, 2023 and his

4

deposition was scheduled for March 24, 2023. *See* **Exhibit 5**. He advised counsel he would not appear. The deposition had to be postponed.

On April 6, 2023, Plaintiff served a subpoena on Verizon Wireless, LLC for Melissa Driscoll's phone records. *See* **Exhibit 6**. She has moved to quash the subpoena. *See* Doc No. 70. On April 7, 2023 Plaintiff served a deposition notice for Dr. Andrew Brown, who serves as Medical Director of the BPD. *See* **Exhibit 7**. The City declined to make him available to be deposed.

### III. <u>Argument</u>

Under Fed. R. Civ. P. 26, relevance is interpreted broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); Fed. R. Civ. P. 26(b)(1). *See also* Fed. R. Evid. 401 (relevant evidence is that which "has any tendency to make a fact more or less probably than it would be without the evidence…"). The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome. *See Rockstar Consortium US LP*, No. 14-91322-FDS, 2015 WL 5972422, at *5 (D. Mass. Oct. 14, 2015) (The party "resisting discovery bears the burden of showing that [it] imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance") (internal quotations omitted).

**(1) Reardon is a Relevant Fact Witness and Plaintiff Must Have the Opportunity to Depose Him in Advance of Trial.**

Both Plaintiff and Defendant have identified Reardon as a relevant fact witness as he is one of the civilians who made a complaint against Plaintiff. Rather than investigate Plaintiff's June 4,

5

2017 complaint that Driscoll, a resident of Boston and a BPD officer, violated BPD rules, the BPD sent two lieutenant ("Lt.") detectives to investigate Reardon's claims, made at the end of September 2017, that Plaintiff had engaged in inappropriate behavior in Marshfield. Plaintiff anticipates that Reardon will testify regarding his conflict with Plaintiff and her husband. Reardon is mentioned throughout discovery produced by Defendant, and BPD has discussed disciplining Plaintiff because of Reardon's complaint. Plaintiff contends that BPD's investigation regarding Reardon's complaint was slanted toward trying to ruin Plaintiff's character and career.

Though Reardon owns a home in Marshfield, MA, he spends the winter in North Carolina. As such, Plaintiff sought to depose him via Zoom in North Carolina this winter. Though Reardon was initially interested in testifying – and even left a voicemail with Plaintiff's counsel to that effect – days before his scheduled deposition, Reardon mailed a packet of information to Attorney Carter indicating that he would not be appearing as his medical provider had advised him not to drive to the deposition location. *See* **Exhibit 5** (medical information redacted). Reardon indicated to Attorney Carter that he was available to be deposed in Massachusetts in June – outside of the fact discovery period.

Plaintiff respectfully requests that this Court compel Reardon to testify and produce documents in connection with the subpoena between June – September 2023, when he is available in the Commonwealth. This deposition is only anticipated to be a partial day and taking Reardon's deposition outside of fact discovery is not anticipated to impact the trial date or expert discovery. Accordingly, Plaintiff respectfully requests that the Court compel Reardon to appear for a deposition in the June – September timeframe when he is in Massachusetts. Defendant has indicated it does not intend to oppose this request.

### (2) The City Must Produce a 30(b)(6) Witness or Be Prohibited From Introducing Additional Testimony Regarding Plaintiff.

In an effort to further narrow the Schedule A to the 30(b)(6) deposition notice and avoid duplicative testimony, on March 26, 2023, Plaintiff further narrowed the Schedule A topics. *See* **Exhibit 8**, March 26, 2023 email from L. Passanisi to E. Bostwick. Plaintiff is still seeking a deponent on the following topics:

> 3. Defendant's rationale for placing Donovan on administrative leave.
>
> 4. Donovan's employment status and handling of her administrative leave and disability leave, including compensation and disability related issues.
>
> 5. The process or procedure followed in taking Donovan's BPD issued firearm while on leave.
>
> 10. Donovan's BPD medical record from 2012 – to the present.
>
> 35. The identity of BPD officers (*i.e.*, non-civilian employees) who currently hold positions higher than the rank of Sergeant and identify as female from 2017 to the present.[3]

*See* **Exhibit 1**. Defendant placed Donovan on administrative leave in May of 2018. In connection with being placed on leave, Plaintiff's BPD equipment, including her BPD issued firearm and vehicle, were taken and she was required to seek permission prior to entering into any BPD building. Donovan has never been notified that she was removed from Administrative Leave. In September of 2018, while cleaning out her office so that her replacement could take her role, Plaintiff fainted at BPD headquarters and required medical care. While receiving medical care, BPD required Plaintiff to report periodically to the department to meet with medical professionals. However, BPD stopped ordering Plaintiff to report to BPD's medical department years ago. Consistent with her administrative leave status, Plaintiff still must request permission to enter a

---

[3] Though counsel for the parties conferred regarding these topics, Defendant did not write formal objections.

BPD building, does not have her firearm, and has not been notified that she can return. Donovan's paystubs reflect that she is on administrative leave, BPD produced documents showing that in 2019 she was considered on administrative leave, and Captain Christopher Hamilton acknowledged that Plaintiff is on administrative leave. *See* **Exhibit 9**, C. Hamilton Depo. Transcript, pp. 129-130.

Despite the fact that BPD is not treating Plaintiff as if she is on injured leave, Defendant's counsel has made assertions that Plaintiff is on disability leave and there is some documentation reflecting that she has been assigned to the Medically Incapacitated Section. Topic Nos. 3-5 and 10 are relevant to the harm Plaintiff has suffered. Plaintiff has been placed in administrative limbo for nearly five years and she seeks to understand how the BPD has been treating her and why. Accordingly, the BPD must produce a witness to testify as to Topic Nos. 3-5 and 10 or otherwise be precluded from arguing at trial she has been on medical leave.[4]

Additionally, as to Topic No. 10, Defendant has made several unsupported statements that Plaintiff has a drinking problem. Plaintiff requests that BPD produce a witness to testify as to her BPD medical file – including email correspondence from a BPD doctor contained therein – that no treatment was needed for alcohol use. Alternatively, Plaintiff requests that the BPD stipulate that her medical file (Donovan 1131-1513) can be introduced at trial without a BPD witness.

Moreover, as to Topic No. 35, Plaintiff seeks to introduce evidence related to the demographic makeup of the BPD leadership from 2017 to the present to show the lack of gender

---

[4] Defendant's counsel has also made representations that they may have more documents to produce related to these topics (which have been referred to as "HR topics"). Should Defendant produce documents related to this request, Plaintiff respectfully requests that she also be able to depose a 30(b)(6) designee as to those topics.

diversity. This information is relevant to show that she and other female leaders were in the minority.

**(3) Dr. Brown Has Relevant Testimony Related to Statements Made by BPD Leadership about Plaintiff's Career and Should Submit to a Brief Deposition (90 Minutes) Related to the Same.**

While out on administrative leave, Plaintiff met and/or spoke with two doctors for the BPD – Dr. Andrew Brown and Dr. Dieter Afeln. In July of 2019, Dr. Brown called Plaintiff and indicated that he wanted to speak with her about information as to what the BPD was planning for her. He reported to her that he had spoken to someone "very high up" on the BPD Command Staff and had information about the BPD's plans for her, including an intent to bring her back. However, Dr. Brown would not provide Plaintiff with further details about who he spoke with or what information he had been provided by the Command Staff. Plaintiff, however, has remained on administrative leave for years. Accordingly, Plaintiff believes Dr. Brown has testimony relevant to how the BPD viewed her future career with the department, which is directly relevant to her claims of discrimination and retaliation as well as to her damages, and accordingly he should be compelled for a short deposition, not to exceed 1 ½ hours.[5]

**(4) Defendant Must Produce All Discovery Related to the September 22, 2017 Interview of Melissa Driscoll.**

On September 22, 2017, around the *same time* Mrs. Driscoll had contacted Melissa Graham and Sue Callahan encouraging them to file complaints against Plaintiff *and* around the

---

[5] Plaintiff seeks to depose Dr. Brown in his capacity as a medical provider for the BPD. On April 12, 2023 counsel for Defendant disclosed that Dr. Brown was a contractor and Defendant was not sure if they would produce him. Plaintiff asked for Dr. Brown's contact information, but Defendant did not provide it. (This is the second time Defendant has failed to provide contact information. Despite the Court's directive, Defendant did not provide contact information for Gross and Plaintiff was required to expend time and money to locate his address to serve him, even though counsel for the City of Boston defended his deposition.)

9

*same time* Reardon had filed his complaint,[6] Mrs. Driscoll contacted IAD to raise purported safety concerns about Plaintiff. Mrs. Driscoll was interviewed by IAD Lt. Det. Brian McEachern ("McEachern") shortly after contacting him. However, BPD has not produced an audio recording, notes, or a report related to this interview. McEachern testified that he "would have been taking notes" and that he was "pretty sure [he] would have done a report on it."[7] *See* **Exhibit 10** McEachern Depo. pp. 147-148. Defendant has not produced a report regarding this September 22, 2017 interview.

>The report and all meeting notes are responsive to the following requests:
>
>**RFP No. 29:** Please provide copies of any and all reports or other summarizations regarding any investigations conducted by IAD concerning Plaintiff.
>**Response No. 29**:[8] Objection. The City objects to this request to the extent it seeks documents not within its possession, custody, or control. Notwithstanding, without waiving this objection, and without withholding documents, see COB 307-33.
>
>**RFP No. 60:** Any interview notes, tape recordings, summaries or other documents concerning meetings or telephone conferences with Melissa Driscoll.
>**Response:** Pursuant to Fed. R. Civ. P. 26(b)(1), the City objects that this request is overly broad, cumulative, unduly burdensome, and not reasonable [sic] limited in time or scope.
>Further, the City has produced responsive documents including COB 6198-6199, COB ESI produced June 27 and July 27, 2022, and Melissa Driscoll recorded interview, October 25, 2017, COB 8816.
>If the City locates additional responsive documents, it will produce them.

*See* **Exhibits 11 & 12**.

Plaintiff still has not received any copies of reports or notes of the interview related to the Melissa Driscoll September 22, 2017 interview. This information is highly relevant as it speaks to

---

[6] Neither of the complaints brought by Melissa Graham or Sue Callahan resulted in sustained charges. McEachern had a role in investigating all three complaints as well as the June 4, 2017 complaint. Additionally, Mrs. Driscoll was not interviewed regarding the June 4, 2017 incident until October 25, 2017 over a month after reporting her alleged safety concerns.

[7] IAD Deputy Superintendent Jeff Walcott originally referred to this interview as a "recorded" interview, but McEachern stated it was not recorded. *See* COB008781.

[8] Defendant misnumbered its response to this RFP.

10

how the BPD treated the Driscolls (as opposed to Plaintiff), the BPD's investigations into Plaintiff, and is important evidence related to the credibility of Mrs. Driscoll. Accordingly, Plaintiff requests that the BPD be compelled to produce all discovery related to the September 22, 2017 interview.

### (5) Discovery Related to the January 2, 2023 Incident Regarding Richard Driscoll is Relevant to his Credibility.

In January of 2023, Plaintiff noticed that the police were called to the Driscoll home. She later learned that someone within the home had called 911 and that Driscoll had prevented the officers from entering his home. She learned that the officers responded a second time and entered the home and was told that there was body camera footage which showed Mrs. Driscoll screaming about Plaintiff and Plaintiff's cousin. Driscoll told his version of the incident during his February 15, 2023 deposition which differs vastly from what Plaintiff was told. *See* **Exhibit 13**, Depo. R. Driscoll, pp. 280-288. However, Driscoll acknowledged that an IAD investigation had been taken out against him related to the incident. *Id.* During Defendant's 30(b)(6) deposition, counsel for Defendant instructed the witness not to answer regarding the January 2 Incident.

This information is responsive to 30(b)(6) Topic No. 17: "Any complaints against Lt. Driscoll from June 2017 to the present" and Topic No. 18: "Lt. Driscoll's employment history, personnel records, and/or IAD/disciplinary records from 2000 to the present…" as well as the following Document Requests.

> **RFP 16:** Please provide all video and/or oral recordings made by anyone concerning the allegations contained within Plaintiff's Complaint.
> **Response:** The City will produce all responsive records in its possession, custody, or control.
>
> **RFP 35:** Please provide copies of any statements and/or affidavits made by any individual concerning Plaintiff from October 1, 2013 to the present.
> **Response:**[9] Objection. The City objects to this request on the grounds that tis overly broad, vague and unduly burdensome. The City further objects on grounds that the

---

[9] Defendant misnumbered its response to this RFP.

11

information requested is not relevant, s not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects to the extent this request seeks documents from third parties that are not within its possession, custody, or control. Notwithstanding, without waiving these objections, and without withholding documents, see COB 391-6034.

**RFP No. 69:** To the extent not already covered by the foregoing Requests, any other nonprivileged document or communication concerning Beth Donovan relating in any way to the allegations in the Complaint, her Charge of Discrimination, ACU and/or IA's investigation into her 2013 sexual assault, or any ACU and/or IA investigation concerning Beth Donovan from June 1, 2017 to the present.
**Response:** Pursuant to Fed. R. Civ. P. 26 (b)(1) (sic), the City objects to this request because it seeks information that is not relevant. The City objects on the grounds that this request is overly broad, unreasonably cumulative, and unduly burdensome, and not reasonable [sic] limited in time or scope.
Subject to the foregoing objections, the City states that it will produce responsive non-privileged documents, if such information exists.

*See* **Exhibits 11 & 12**.

Plaintiff also requested, to the extent Defendant believed that the January 2 Incident information was not covered by the previous requests, whether the Defendant would object to Plaintiff amending the Second Set of RFPs or serving one additional request to include the following:

**RFP No. 70:** All police reports, body camera footage, IA investigations, complaints, internal investigations, emails and other communications (including without limitation communications involving Captain [Det.] Therese Kozmiski, Let. Det. Timothy Gaughan, and Lt. Dt. Richard Driscoll concerning the January 2, 2023 / January 3, 2023 police response to the residence of Richard and Melissa Driscoll.

*See* **Exhibit 4**. Defendant has never responded as to its position.

Information related to the January 2, 2023 response is relevant to Driscoll's credibility as a witness and to the Driscolls repeatedly blaming Plaintiff for problems of their own making. It is also relevant to how Driscoll has used his position as a male Lieutenant to avoid appropriate police response and to establish protection for his own career. This is important comparator evidence and should be produced.

**(6) Body Camera Footage of Melissa Driscoll in Connection with the January 2, 2023 Incident is Relevant to Mrs. Driscoll's Credibility**

Similarly, body camera footage of Mrs. Driscoll would be relevant to her credibility and her pattern of making false accusations against Plaintiff.[10] Mrs. Driscoll has a penchant of making false accusations against Plaintiff at every opportunity, and with the support of her husband filed frivolous complaints against Plaintiff and/or encouraged civilians to file frivolous complaints. Those false accusations include, not only that Plaintiff swore at her on June 4 and that Donovan used a racial epithet to refer to Gross, but also accusations made in affidavits filed in this Court (Doc No. 36-2 and 70-2). Among other things, despite video evidence to the contrary, Mrs. Driscoll continues to accuse Plaintiff of egging her home and that Plaintiff has continued to harass her and her family. Twice, Mrs. Driscoll has represented to this Court that: "On July 6, 2018, the Court granted my [Harassment Prevention Order] against the plaintiff." *See* Doc No. 36-2, ¶ 27 and Doc No. 70-2, ¶ 27. Yet she *continues* to omit that it was vacated. When asked at her deposition why she failed to accurately report to the Court in her affidavit the true status of the Harassment Prevention Order, Mrs. Driscoll cavalierly stated: "***I would have assumed your client would have already brought that to your attention.***" *See* **Exhibit 14**, M. Driscoll Dep. pg. 221.[11]

Mrs. Driscoll was asked about her response on January 2, 2023 and stated that she did not believe she had mentioned anything about Plaintiff that night. *See id*. pp. 229-233. Plaintiff is

---

[10] Body camera footage is relevant to the RFPs referenced in the section above as well as RFP No. 60.

[11] With regard to Mrs. Driscoll, the Court has already acknowledged that: "The fact that three complaints were filed against Plaintiff simultaneously by close associates of Mrs. Driscoll… indicates direct involvement and shows influence which Mrs. Driscoll appeared to have over key events that led to Plaintiff being placed on administrative leave and later demoted." *See* Doc No. 52, pg. 4.

entitled to know whether Mrs. Driscoll again falsely accused her of harassing behavior and this footage goes directly to Mrs. Driscoll's credibility and pattern of false accusations against Plaintiff. Accordingly, it should be produced.

**(7) Defendant Cannot Withhold Responsive Documents.**

On April 12, 2023, counsel for Defendant made representations that Defendant had additional documents to produce and referred to them as "emails." Plaintiff is thus unsure what documents Defendant has not yet produced and to which RFPs they are responsive. Defendant had an obligation to search for responsive documents related to both sets of RFPs. Plaintiff respectfully requests that Defendant be ordered to produce all responsive documents within two weeks of the Court's order on this motion to compel. Plaintiff requests that should Defendant produce documents related to the 30(b)(6) deposition topics noted above and/or that would merit re-opening prior depositions, that Plaintiff should be permitted to conduct depositions related to the belatedly produced discovery.

**(8) Susan Callahan is a Relevant Witness and Plaintiff Requires the Opportunity to Depose Her.**

Callahan was scheduled to be deposed on April 14, 2023, but the day before she cancelled saying she had contracted the flu and would be unavailable for ten days. Defendant has consented to Plaintiff taking her deposition after the close of fact discovery and Plaintiff expects it to only be a partial day deposition. To avoid any doubt, Plaintiff requests that the Court compel her to appear at a mutually convenient date and time to be deposed after April 14, 2023.

### (9) Plaintiff Will Be Seeking a Separate Order Compelling Verizon Wireless LLC to Produce Responsive Discovery.

As noted above, Mrs. Driscoll has filed a motion to quash the subpoena to Verizon Wireless LLC. This subpoena does not involve Defendant. Plaintiff intends to oppose Mrs. Driscoll's motion and move to compel compliance with the subpoena. Plaintiff would like to reserve the right to move forward to compel compliance with the subpoena following the Court's order on the motion to quash.

## CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court compel Defendant to produce a 30(b)(6) designee, to produce other responsive documents as set forth herein, and to allow Plaintiff to take two fact witness depositions outside the close of fact discovery.

Respectfully submitted,

Plaintiff
**BETH DONOVAN**

By her attorneys,

*/s/ Lucia A. Passanisi*
Nicholas B. Carter (BBO#561147)
Lucia A. Passanisi (BBO#691189)
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777
ncarter@toddweld.com
lpassanisi@toddweld.com

Dated: April 14, 2023

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff requests a hearing on the foregoing motion.

## RULE 37.1 CONFERENCE

Counsel for Plaintiff and Counsel for Defendant have had numerous telephonic conferences regarding the relief requested herein as well as written correspondence regarding the relief requested herein. Telephonic discovery conferences between counsel were held on September 26, 2022, October 3, 2022, January 25, 2023, January 27, 2023, February 10, 2023, and March 23, 2023. Additionally, following certain depositions, Plaintiff's counsel followed up regarding outstanding discovery matters. The most recent conference was held on April 12, 2023 in person between Attorney Passanisi and Attorney Bostwick at Attorney Bostwick's office. Attorney Bostwick indicated that the City will either not oppose and/or will take no position as to conducting Richard Reardon's deposition outside the close of fact discovery. Defendant has consented to Plaintiff taking Susan Callahan's deposition outside of the fact discovery window. As to all other relief requested herein, the City has not made clear what its position is.

*/s/ Lucia A. Passanisi*

## RULE 7.1 CONFERENCE

On April 12, 2023, Attorney Passanisi and Attorney Bostwick conferred in person regarding the present motion and were unable to reach a resolution despite a good faith effort to do so.

*/s/ Lucia A. Passanisi*

## CERTIFICATE OF SERVICE

I, Lucia A. Passanisi, hereby certify that the foregoing document was filed through the ECF system and will therefore be sent electronically to all counsel of record as identified on the Notice of Electronic Filing (NEF).

*/s/ Lucia A. Passanisi*